**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re:<br><br>MOHAWK DRIVE CORP.,<br><br>Debtor | Chapter 11<br>Case No. 24-40250-CJP |

## MEMORANDUM OF DECISION AND ORDER ESTABLISHING TENANT'S RIGHTS WITH RESPECT TO RECOUPMENT AGAINST POST-REJECTION RENT IN CONNECTION WITH DEBTOR'S MOTIONS SEEKING DETERMINATION OF STATUTORY SETOFF CLAIMS AND REQUESTING ESCROW OF RENT

Before the Court are the *Motion for Determination of Statutory Setoff Claims Pursuant to 11 U.S.C. Section 365(h)(1)(B)* [ECF No. 109] (the "Setoff Motion") and the *Motion for Escrow Order as a Condition of Election by Tenant Under 11 U.S.C. Section 365(h)(1)(B)* [ECF No. 127] (the "Escrow Motion," together with the Setoff Motion, the "Motions") filed by the Chapter 11 debtor in possession, Mohawk Drive Corp. (the "Debtor"). I have considered the Motions, the oppositions filed by David Engel, as Receiver (the "Receiver") for the tenant Middlesex Integrative Medicine, Inc. ("MIM")[1] [ECF Nos. 121 and 130], briefing by the Debtor and the Receiver with respect to the Debtor's rejection of the commercial lease [ECF Nos. 77 and 78, respectively], the Receiver's *Statement of: (1) Election to Remain in Possession Pursuant to 11 U.S.C. Section 365(h); and (2) Intention to Pay Post-Rejection Rent Owed to Debtor* (the

---

[1] Pursuant to an order of the Suffolk Superior Court in *MIM Mass Convertible Note Series III v. Bartlett et al.* (Civil Action No. 2384CV02279) entered on October 16, 2023, David Engel was appointed the Receiver of MIM. The Receiver subsequently obtained an order from the Suffolk Superior Court confirming his authority to act on behalf of MIM in electing to remain in possession of the Leased Premises, as defined herein, and to litigate to protect MIM's interests in this Court. The Receiver has no direct rights and is limited to exercising only the rights possessed by MIM. References to MIM and the Receiver are, therefore, interchangeable in this decision and a reference to one is not intended to be to the exclusion of the other.

"Election") [ECF No. 95], pursuant to which the Receiver elected to retain MIM's rights as tenant under the commercial lease pursuant to 11 U.S.C. § 365(h),[2] and the Receiver's Proof of Claim 2-1 filed on behalf of MIM ("Claim No. 2"). For the reasons below, I grant the Motions in part as follows.[3]

I.  **Background and Legal Framework**

On March 15, 2024 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy petition with this Court. The Debtor owns non-residential real property located at 25 Mohawk Drive, Leominster, Massachusetts (the "Property").[4] The Debtor remains in possession of its assets and continues to operate its business as debtor in possession pursuant to § 1107.

On or about June 15, 2016, the Debtor, as lessor, entered a commercial lease ("Lease") with MIM for a certain portion of the Property. As amended, the Lease provides for MIM to occupy 80,705 square feet of the Debtor's Property (the "Leased Premises") for monthly rent of $38,016.63. The parties to the Lease agreed that MIM would use the Leased Premises for a registered marijuana dispensary grow facility, including cultivation and processing of marijuana and marijuana-infused products. A copy of the Lease is attached to numerous pleadings and Claim No. 2.

---

[2] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code" or "Code").

[3] The Debtor has asserted that the Lease was terminated by notice after default before the filing of the petition for relief in this case. I am not deciding that issue in connection with this decision on the Motions. As will be discussed below, a determination as to when the Lease terminated requires a factual record and application of somewhat unsettled Massachusetts law regarding dependent covenants in commercial leases. For purposes of these Motions, I am assuming that the Lease was an executory contract as of the petition date.

[4] The Debtor initially designated itself as a subchapter V small business debtor in its petition [ECF No. 1]. After the United States Trustee objected, the Court ultimately struck the designation. *See* ECF Nos. 30 and 40. The Debtor is now designated as a single asset real estate debtor as defined under 11 U.S.C. § 101(51B) [ECF No. 41].

2

The Debtor commenced eviction proceedings against MIM prepetition in Leominster District Court (Case No. 2361SU000008), obtaining a judgment of possession and rent (the "State Court Eviction Judgment"). The Receiver sought relief from the State Court Eviction Judgment and filed his own prepetition action in Suffolk Superior Court against the Debtor with respect to the roof repair allegations, Civil Action No. 2384CV0227, seeking a declaratory judgment and asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of Mass. Gen. Laws ch. 93A (the "State Court Complaint"). Through these actions, MIM and the Debtor had been actively engaged in prepetition litigation where the Debtor asserted that MIM defaulted under the Lease by its failure to pay rent and MIM asserted that the Debtor failed to maintain the roof of the Leased Premises in good repair as required by the Lease "entitling it to terminate the lease under the mutually dependent covenants" doctrine and that the Debtor's alleged breaches of the Lease's implied covenant of quiet enjoyment resulted in MIM's constructive eviction, among other things. State Court Complaint, ¶ 23. The parties maintain those positions in this case, although MIM seeks to recoup post-rejection damages.

MIM has filed Claim No. 2 in the amount of at least $5 million incorporating the State Court Complaint, and the Debtor has objected to Claim No. 2 [ECF No. 108] (the "Claim Objection"). The Debtor has also commenced Adversary Proceeding No. 24-4012 (the "Adversary Proceeding" or "AP") seeking turnover of the Leased Premises and injunctive relief. The Debtor filed an *Amended Verified Complaint for Turnover* [AP ECF No. 17] (the "Turnover Complaint") consisting of the following counts: Count I for a declaratory judgment that the Lease has been terminated) and Counts II and III for turnover of the Leased Premises. The Debtor alleges MIM is delinquent in rental payments for the period of July 2023 to March 2024

3

in the amount of $363,138.83.  Pursuant to the Turnover Complaint, the Debtor asserts that it issued a termination notice on May 28, 2024 to MIM and the Receiver asserting certain defaults that were not capable of cure.  The Receiver has filed an answer denying the allegations in the Turnover Complaint [AP ECF No. 27].

On the Petition Date, the Debtor filed a *Motion for Authority to Reject Lease of Non-Residential Real Property* to reject the Lease with MIM (the "Rejection Motion") [ECF No. 7].  On June 17, 2024, after multiple hearings and further briefing by the parties, the Court granted the Debtor's Rejection Motion, permitting the rejection of the Lease as of the filing date of the Rejection Motion "[t]o the extent the Lease was not terminated prepetition . . . ."  Proceeding Memorandum and Order [ECF No. 87] (the "Rejection Order").  Pursuant to the Rejection Order, on July 16, 2024, the Receiver filed the Election of MIM to remain in possession of the Leased Premises pursuant to § 365(h)(1)(A)(ii), and pay post-rejection rent that is owed.

The parties disagree as to whether MIM may recoup its alleged prepetition, pre-rejection damages against post-rejection rent that becomes due under the Lease.  Pursuant to the Setoff Motion, the Debtor asks the Court to "reject any offset by [the Receiver] pursuant to 11 U.S.C. Section 365(h)(1)(B), or any offset or recoupment whatsoever," Setoff Mot., ¶ 10, because the Receiver "has paid no post-petition rent, nor has [the Receiver] set forth the amounts or itemization of any amounts that he claims to be properly offset as being the value of any damage caused by non-performance of the Debtor," *id.* at ¶ 9.  In its Escrow Motion, the Debtor seeks the establishment and funding of an escrow account as a condition of the election under 11 U.S.C. § 365(h)(1)(B).[5]  The Receiver responded to the Setoff Motion that the establishment of damages

---

[5] Specifically, the Debtor seeks the establishment of an escrow in the amount of at least $266,116.41, the rent that has accrued on a post-petition basis at the rate of $38,016.63 per month for seven months, without regard to the prepetition rent claimed to be due and owing.

4

and itemization at this stage of the proceedings is premature, but noted that MIM has asserted the right to recoup the value of cannabis crops lost because of alleged contamination resulting from failure to keep the roof and an exterior wall in good repair and additional "costs." *See* Obj. to Setoff Mot., ¶ 8 [ECF No. 121]. MIM has not fixed the roof and exterior wall that it asserts the Debtor has failed to fix. The Receiver "estimates the cost of MIM repairing the roof and wall itself will be in the range of $40,000 to $50,000." *Id.* at ¶ 11.

It is undisputed that if a debtor that is a lessor rejects a lease, a tenant may elect to retain certain rights under the rejected lease. *See* 11 U.S.C. § 365(h)(1). Section 365(h)(1) provides, in relevant part:

> (A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and— . . .
>
> (ii) if the term of such lease has commenced, the *lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation*) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.
>
> (B) If the lessee retains its rights under subparagraph (A)(ii), *the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection* of such lease and for the term of any renewal or extension of such lease, *the value of any damage caused by the nonperformance after the date of such rejection*, of any obligation of the debtor under such lease, *but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date* caused by such nonperformance.

11 U.S.C. § 365(h)(1)(A)(ii) and (B) (emphasis supplied).

The parties do not appear to dispute that, if MIM suffers damages because of the failure of the Debtor to perform an obligation under the Lease that arises post-rejection, MIM's sole recourse would be to offset those damages from rent reserved (post-rejection rent to be paid) under the Lease. For example, if the Receiver were to effect repairs to the roof for which the

5

Debtor would have been responsible under the Lease, the Receiver could offset the cost of those repairs against rent as it became due.  The Debtor asserts that MIM has not repaired the roof and merely claims that it continues to be damaged by the alleged prepetition, pre-rejection failure of the Debtor to maintain the roof in good working order.  MIM asserts that it may recoup damages that it suffered prepetition, pre-rejection from rent that may become due under the Lease and appears to assert that it may recoup consequential damages that have accrued because of post-rejection failures of the Debtor to repair.  The Debtor disputes that it failed to maintain the roof in good working order and states that MIM has not paid rent and has not proven any damages.  The Debtor also asserts that recoupment is not a remedy available to MIM where it is asserting consequential damages arising from an alleged pre-rejection breach of the Lease and where the Debtor asserts that it has insurance coverage that would provide indemnification for any such damages.

In determining the Motions, I must decide whether (i) MIM may have any rights of offset or recoupment under § 365(h)(1)(B), or otherwise, that excuse its obligation to pay post-rejection rent under the Lease and (ii) if MIM may have any such rights, it should be required to pay post-petition rent into escrow until it has proven damages under the Lease.

## II.  Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334.  Section 1334 vests original jurisdiction in district courts over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Section 157(b)(1) of title 28 provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" that are referred to them by the district court.  28 U.S.C. § 157(b)(1).  The United States District Court for the District of Massachusetts,

by standing order, has referred to the bankruptcy court all cases in which jurisdiction is premised on 28 U.S.C. § 1334. *See* D. Mass. R. 201. As the Motions require interpretation of § 365(h)(1)(B), this Court has "arising under" jurisdiction over the Motions pursuant to 28 U.S.C. §§ 157 and 1334.

III. <u>Analysis</u>

Courts applying § 365(h)(1)(B) have recognized that the language of that section does not provide extensive guidance on the respective rights and remedies of the lessor and lessee after rejection and the lessee's election to remain in possession of the leased premises. *See IDEA Boardwalk, LLC v. Polo N. Country Club, Inc. (In re Revel AC, Inc.)*, Adv. Pro. No. 14-01756 (MBK), 2016 WL 6155903, at *7 (Bankr. D.N.J. 2016) (noting several questions open for interpretation regarding respective rights and responsibilities of parties to a rejected lease where non-debtor lessee elects to remain in possession). As context for interpretation of § 365(h), courts have looked to the purpose of rejection of a lease under § 365:

> The primary function of rejection is to "allow[ ] a debtor-lessor to escape the burden of providing continuing services to a tenant." *In re Lee Road Partners,* 155 B.R. 55, 60 (Bankr. E.D.N.Y. 1993) (citing cases), *aff'd,* 169 B.R. 507 (E.D.N.Y. 1994). Rejection affects the lessor's duties to the tenant. *See also In re Stable Mews Associates, Inc.*, 41 B.R. 594, 597 (Bankr. S.D.N.Y. 1984) (rejection "reliev[es] the estate from covenants requiring future performance, such as the provision of utilities, repairs, maintenance and janitorial services by the debtor") (citation omitted); 2 *Collier on Bankruptcy* § 365.09, at 356–58 (15th ed. 1995) (rejection "results merely in the cancellation of covenants requiring performance in the future by the landlord"). . . . "[O]bligations under the lease and rights associated with the tenant's leasehold interest do not just vanish because a debtor has rejected the lease. The leasehold interest remains intact and the lease remains operative between the parties." [*In re Chestnut Ridge Plaza Assocs., L.P.*, 156 B.R. 477, 485 (Bankr. W.D. Pa. 1993)] (citations omitted). Thus, although the rejection of the lease by the debtor-landlord relieves it of prospective obligations to perform under the lease, it does not relieve it of its obligation to accept the agreed upon reduced rent provided for under the terms of the lease.

7

*Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1034 (3d Cir. 1995). This context is further balanced with the legislative history of § 365(h), which also shows a Congressional intent to preserve certain limited rights of tenants:

> A 1978 Senate Report remarked that under the terms of § 365(h), "the tenant will not be deprived of his estate for the term for which he bargained." S.Rep. No. 95–989, at 60 (1978).... The Section–by–Section Analysis of the 1994 amendments to the Bankruptcy Code further reflect a Congressional desire to protect the rights of those who are lessees of debtors:
>
>> This section clarifies section 365 of the Bankruptcy Code to mandate that lessees cannot have their rights stripped away if a debtor rejects its obligation as a lessor in bankruptcy. This section expressly provides guidance in the interpretation of the term "possession" in the context of the statute. The term has been interpreted by some courts in recent cases to be only a right of possession (citations omitted). This section will enable the lessee to retain its rights that [are] appurtenant to its leasehold. These rights include the amount and timing of payment of rent or other amounts payable by the lessee, the right to use, possess, quiet enjoyment, sublet and assign.
>
> *In re Zota Petroleums*, LLC, 482 B.R. 154, 161–62 (Bankr. E.D. Va. 2012) (citations omitted).

*IDEA Boardwalk, LLC v. Revel Ent. Grp., LLC (In re Revel AC, Inc.)*, 532 B.R. 216, 228–29 (Bankr. D.N.J. 2015) (quoting *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 777–78 (Bankr. D.N.J. 2014) in the context of examining the interplay of §§ 365 and 363).

Under § 365(h), MIM is entitled to remain in possession of the Leased Premises for the balance of the of the Lease term, and any renewal or extension period. 11 U.S.C. § 365(h)(1)(A)(ii). While in possession, MIM will have the right to use and quiet enjoyment of the premises, as well as such rights appurtenant to the real property, but "[a]fter rejection, the landlord is no longer obligated to continue performance under the lease, other than to provide the tenant with possession of the premises, and the rights appurtenant thereto." *In re Revel AC, Inc.*, 532 B.R. at 229 ("undertakings [that would otherwise be] required by the landlord [post-rejection] in order to allow the Tenants to restart operations cannot come at the expense of [the lessor]").

8

As such, post-rejection, the Debtor does not have the obligation to maintain the Leased Premises by keeping the roof in "good order and repair" as would otherwise be required by section 12 of the Lease and applicable nonbankruptcy law. MIM may undertake to do that at its expense and may offset the cost against future rent, but it has not done so. MIM may not offset alleged post-rejection consequential damages that arise from a failure to maintain the roof where the Debtor no longer has a contractual obligation to maintain the roof and MIM has elected to remain in possession of the Leased Premises.

The more difficult question is whether MIM may offset or recoup alleged prepetition, pre-rejection damages from post-rejection rent reserved under the Lease. Several courts have held that both contractual recoupment and equitable recoupment would permit a tenant that has exercised the right to remain in possession under § 365(h)(1)(A)(ii) to recoup prepetition, pre-rejection claims against post-rejection rent that becomes due under a lease. *See IDEA Boardwalk, LLC v. Revel Ent. Grp., LLC (In re Revel AC, Inc.)*, 909 F.3d 597, 601 (3d Cir. 2018) (affirming that a tenant may reduce its post-rejection rent by prepetition amounts permitted by the lease and "even if § 365(h) did not extend to the recoupment amounts, [the tenant] would be permitted to reduce its rent obligations under the doctrine of equitable recoupment"); *In re Flagstaff Realty Assocs.*, 60 F.3d at 1035 (concluding that "[e]ven if statutory grounds were not available, we hold that the doctrine of recoupment would provide relief to tenant"); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 82–83 (Bankr. D. Del. 2003) (determining that "the doctrine of recoupment is an equitable doctrine and does not require an express contractual provision or statute to give it effect").

An example of contractual recoupment would be where a lease provided that, if a landlord did not make necessary repairs, a tenant may make the repairs and offset the cost

9

against rent. The Lease does not contain any explicit provisions for contractual recoupment relating to repairs or damages arising from breach of covenants to repair. Moreover, MIM does not allege that it incurred costs in making such repairs.[6]

Alternatively, equitable recoupment "allows a defendant to 'defend' against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction." *F.D.I.C. v. Kooyomjian*, 220 F.3d 10, 14 (1st Cir. 2000) (examining recoupment in context of negligence claim and quoting *Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 672 (1st Cir. 1999)). "'[B]oth the primary damage claim and the claim in recoupment must arise out of the same transaction and involve the same litigants.'" *Id.* at 14 (quoting *Bolduc*, 167 F.3d at 672 n.4 (citation omitted)).

> This common law doctrine [of equitable recoupment] is not codified in the Bankruptcy Code, but has been established through decisional law. The "trustee of a bankruptcy estate 'takes the property subject to rights of recoupment.'" *In re Holford*, 896 F.2d 176, 179 (5th Cir.1990) (quoting *In re Career Consultants, Inc.*, 84 B.R. 419, 426 (Bankr. E.D. Va. 1988)); *In re University Medical Center*, 973 F.2d 1065, 1080 (3d Cir. 1992). In recognition of the special nature of recoupment, courts have permitted its application even in situations where the Code does not permit application of the related doctrine of setoff, 11 U.S.C.A. § 553 (West 1993). Thus, postpetition funds owing to the landlord may be recouped against prepetition claims owed by the landlord despite the usually inflexible automatic stay provision of the Code, 11 U.S.C.A. § 362(a) (West 1993). *See, e.g., In re Klingberg Schools*, 68 B.R. 173, 178–79 (N.D. Ill. 1986), *aff'd*, 837 F.2d 763 (7th Cir. 1988).

*In re Flagstaff Realty Assocs.*, 60 F.3d at 1035.

The Debtor asserts that the claims of MIM and rent due under the Lease do not arise from the same transaction. I do not agree. Each claim arises from an obligation created by the

---

[6] MIM notes that the Lease does provide for a "just and proportionate" abatement of rent in the circumstance of a "fire, casualty, or taking renders the [Leased] Premises untenantable." Lease, ¶ 11. The Lease does not define "casualty," but a rent abatement would normally compensate a tenant for the fact that the tenant cannot occupy the subject premises. Because equitable recoupment may provide the same remedy, it is not necessary to flesh out this theory where MIM has not. Further, it is unclear whether MIM has alleged a "casualty" caused the leaks in the roof or simply neglect and failure to repair by the Debtor.

10

Lease—the obligation to pay rent and the obligation to maintain the roof in good working order. Here, "both debts . . . arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.* (quoting *In re Univ. Med. Ctr.*, 973 F.2d at 1081); *see also id.* (holding that pre-rejection repair costs and rent each arise from the lease "and it would be inequitable for the landlord to receive rent without compensating tenant for undertaking the repairs"); *cf. Slater Health Ctr., Inc. v. United States (In re Slater Health Ctr., Inc.)*, 398 F.3d 98, 104 (1st Cir. 2005) (concluding, in the context of determining that "same transaction" test for recoupment is met for certain Medicare related claims owed to third party providers, that "same transaction analysis itself inherently embodies competing issues of equity, for the simple reason that it would be inequitable for [a debtor] to enjoy the benefits of the same transaction without also meeting its obligations" (citations and internal quotations omitted)).

The Debtor makes the distinction that MIM seeks consequential damages rather than the cost of making repairs that were the responsibility of the Debtor under the Lease. While factually accurate, it is a distinction that is not relevant in this context as consequential damages arising from a breach of a lease are recoverable under Massachusetts law. *See Motsis v. Ming's Supermarket, Inc.*, 96 Mass. App. Ct. 371, 376–77 (2019) (collecting cases awarding damages for lost profits for a lessor's breach of a commercial lease); *see also* Restatement (Second) of Property (Landlord and Tenant) § 10.2(5) (1977) (upon landlord's breach of lease, as long as no double recovery is involved, tenant may recover for "loss of anticipated business profits, proven to reasonable degree of certainty, which resulted from landlord's default, and which landlord at time lease was made could reasonably have foreseen would be caused by default"). Accordingly, I see no reason why, in the context of § 365(h)(1)(A)(ii), prepetition, pre-rejection

11

consequential damages, if proven, could not be asserted as an offset for rent under the Lease under a theory of equitable recoupment.

The Debtor also contends that, even where MIM has asserted that it has been constructively evicted, Massachusetts law does not permit a commercial tenant to withhold rent because of a breach of a lease by the landlord until constructive eviction is proven. This position is most relevant to the issue of whether the Debtor's prepetition notice of termination was effective and relies on an interpretation of Massachusetts law and the limited adoption of the rule of dependent covenants by the Supreme Judicial Court of Massachusetts. In *Wesson v. Leone Enters., Inc.*, the Supreme Judicial Court "abandon[ed] the common-law rule of independent covenants in commercial leases in favor of the modern rule of mutually dependent covenants as reflected in the Restatement (Second) of Property (Landlord and Tenant) § 7.1 (1977)." 437 Mass. 708, 712, 718–20 (2002) (quoting the Restatement (Second) of Property (Landlord and Tenant) § 7.1 (1977)).

> Under the old rule, a commercial tenant's covenant to pay rent was independent from the Landlord's covenants, and the Tenant was relieved from its obligations—including its obligation to pay rent—"only by actual or constructive eviction." . . . . Today, the general rule is that a commercial tenant may terminate the lease, and thus stop paying rent, if the landlord does not perform a promise that was a significant inducement in the making of a lease, within a reasonable time after being asked to do so. . . . However, this new rule that commercial leases consist of mutually dependent covenants does not apply where "the parties to a lease validly agree otherwise."

*UMNV 205-207 Newbury, LLC v. Caffé Nero Americas Inc.*, No. 2084CV01493-BLS2, 2021 WL 956069, at *7 (Mass. Super. Feb. 8, 2021) (quoting *Wesson*, 437 Mass. at 715 (internal quotations and citations omitted)).

12

Most courts applying *Wesson* appear to have concluded that, because *Wesson* did not adopt the remainder of § 7.1 of the Restatement[7] "[u]nder Massachusetts law, a tenant claiming a breach may terminate the lease and stop paying rent, but is not permitted to stop paying rent and simultaneously claim that the lease remains in force absent actual or constructive eviction by the landlord." *InTeahouse, Inc. v. Chevron Partners, LLC*, No. 2084CV684BLS2, 2021 WL 6298351, at *3–5 (Mass. Super. Ct. Nov. 29, 2021); *see also Indep. Park, Inc. v. Sentinel Prods., Inc.*, 2009 WL 321268, at *4 (Mass. Dist. Ct. Feb. 3, 2009); *Apple D'Or Tree, Inc. vs. Webster-Dudley Sand & Gravel, Inc.*, 2008 WL 2121367, at *3 (Mass. Super. Ct. May 16, 2008); *Shawmut-Canton LLC v. Great Spring Waters of Am., Inc.*, 816 N.E.2d 545, 551–52 (Mass. App. Ct. 2004). *But see In re Tiny's Cafe, Inc.*, 322 B.R. 224, 228 (Bankr. D. Mass. 2005) (holding that a landlord was not entitled to relief from the automatic stay to evict a tenant debtor where the landlord purported to have terminated the lease prepetition for non-payment of rent because, under *Wesson* and the rule of mutually dependent covenants, the tenant was permitted to withhold rent where the tenant could not operate its business because the landlord failed to maintain the roof); *Reed v. U.S. Postal Serv.*, 660 F. Supp. 178, 183 (D. Mass. 1987) (holding in the context of an eviction proceeding that, under Massachusetts law, covenants to pay rent and repair are dependent in a commercial lease and that the United States Postal Service had a right to withhold rent if it was proven that the landlord failed to repair the roof as agreed in the lease). MIM concedes that "there is no Massachusetts state appellate case or binding precedent directly addressing the question of a commercial tenant withholding rent *in the absence of a constructive eviction claim*" and that Massachusetts courts have held that, absent a construction eviction, a

---

[7] The section of the Restatement not adopted in *Wesson* included an option for withholding rent as a remedy for a default by a landlord of a dependent covenant. Restatement (Second) of Property (Landlord and Tenant) § 7.1(2) (1977)).

13

commercial tenant may not withhold rent. Receiver Br. [ECF No. 78], 10–11 n.5 (emphasis in original). MIM has alleged constructive eviction but did not terminate the lease (and its obligation to pay rent). To the contrary, MIM remained in possession and has now elected to remain in possession after rejection pursuant to § 365(h).[8]

Assuming for purposes of the Motions that the Lease was not terminated before it was rejected, recoupment under § 365(h)(1)(A)(ii) may provide a remedy otherwise unavailable under Massachusetts law.[9] In deciding the issues directly presented by these Motions, the Debtor's most significant argument comes into focus. MIM has merely alleged that the Debtor breached the covenant in the Lease to maintain the Leased Premises in good repair and that MIM suffered substantial consequential damages as a result of that breach. The Debtor also asserts that it has coverage under an insurance policy that would indemnify the Debtor from and against any liability for such a claim and that the carrier has issued a reservation of rights letter with respect to MIM's claims. Escrow Mot., at ¶¶ 11, 12. MIM will bear the burden of proof with respect to its asserted rights of recoupment. *See, e.g.*, *Carney v. Cold Spring Brewing Co.*, 304 Mass. 392, 396 (1939) (determining that party asserting recovery by recoupment had burden of proving damages in recoupment). MIM has not yet met that burden.

---

[8] The Lease neither provides that MIM must pay rent if the Debtor fails to maintain the roof, nor does it provide that MIM may conduct repairs and abate rent otherwise due under the Lease. While the parties could have contracted around the mutually dependent covenants doctrine, they did not do so. *See, e.g., Andrews v. Paulajeanne, Inc.*, No. ESCV2010-1674-D, 2013 WL 10835306, at *4 (Mass. Super. Ct. Oct. 15, 2013) (concluding that parties contracted around dependent covenant rule by including a provision providing for specific circumstance where diminished rent could be paid).

[9] I do not decide today whether the prepetition termination by the Debtor was effective. Instead, I must further consider Massachusetts law and MIM's position that a "constructive eviction" allowed it to withhold rent while not terminating the Lease and remaining in possession of the Leased Premises and that determination will be made in the context of the Debtor's Adversary Proceeding against the Receiver seeking turnover of the Leased Premises pursuant to § 542. I may also consider abstaining from deciding those important state law issues to allow those issues to be decided in the pending state court actions.

Even where equitable recoupment may be a remedy available to MIM (assuming the Lease was not terminated by notice), MIM has yet to meet its burden of proof on a number of issues and, therefore, equitable recoupment only remains a potential remedy as to which the Court has latitude in applying to fashion equitable relief. *Cf. In re Buttermilk Towne Ctr. LLC*, No. 10-21162, 2010 WL 11816552, at *1–2 (Bankr. E.D. Ky. July 6, 2010) (declining to adjudicate an equitable recoupment claim until a plan of reorganization had been considered and suggesting that the bankruptcy court had considerable flexibility in fashioning an equitable remedy). In the context of this case, it would be inequitable for MIM to withhold post-rejection rent as "recoupment" for pre-rejection damages that have been claimed, but not proven and, therefore, payment of rent into escrow is appropriate.

### IV. Conclusion

For the reasons above, I grant the Motions in part as follows. MIM may have the right to equitably recoup against post-rejection rent reserved under the Lease, but may only do so once that right is established upon determination of the Claim Objection that has been consolidated with the Adversary Proceeding. In the interim, MIM is obligated to pay rent as required by the Lease. This means that MIM shall pay into an escrow account with its counsel rent going forward as required by the Lease and shall propose a schedule to pay rent that was due post-rejection, commencing April 1, 2024. The Receiver shall file a proposed schedule of post-rejection "catch-up" rent payments within ten (10) days of the date of this Order.

I will schedule a case management conference to discuss litigation of the Claim Objection and Adversary Proceeding. If MIM prevails with respect to its claims, I will rule on its right to equitably recoup the allowed claim amount against rent reserved under the Lease either in the context of plan confirmation or in a further order. At the case management

15

conference that will be scheduled, the parties may also address whether this Court should abstain regarding the issue of whether the asserted prepetition termination of the Lease by the Debtor was effective to permit the state court to decide that issue.

Dated: December 6, 2024

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge